**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

COMMON CAUSE, COMMON )
CAUSE WISCONSIN, BENJAMIN R. )
QUINTERO, )
)
   *Plaintiffs*, )
)  **Case No. 19-cv-323**
  v. )
)
ANN S. JACOBS, MARK L. THOMSEN )
MARGE BOSTELMANN, JULIE M. )
GLANCEY, ROBERT F. SPINDELL, JR., )
and DEAN KNUDSON, in their official )
capacities as Commissioners of the )
Wisconsin Elections Commission, )
MEAGAN WOLFE, in her official )
capacity as the Administrator of the )
Wisconsin Elections Commission, )
)
   *Defendants*. )
——————————————— )

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF**

  Plaintiffs Common Cause, Common Cause Wisconsin, and Benjamin R. Quintero

(collectively, "Plaintiffs") seek declaratory and injunctive relief and allege as follows:

**NATURE OF ACTION**

  1.  This suit asks whether it is constitutional for state law to single out a group

of voters and require them to present or submit information that election officials and

poll workers do not need and do not use in any way. It is undisputed that a state

government has an important regulatory interest in safeguarding electoral integrity and

preventing fraud. As the Supreme Court stated in *Crawford v. Marion County Election*

*Board*, "[t]here is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters." 553 U.S. 181, 196 (2008). *Crawford* concluded that voter identification laws requiring the presentation or submission of photographic identification further those legitimate and important regulatory interests. However, when a state voter identification law requires that one particular form of valid ID that is held by a particular group of voters include extraneous information that is not being used by state and local election officials or poll workers to further the state's legitimate regulatory interests, such useless and irrational requirements must be struck down as unconstitutional.

2.      This suit does not seek to relitigate the facial constitutionality of Wisconsin's voter ID law; nor does it seek that the law be invalidated as applied to a particular group of voters. Rather, Plaintiffs allege that certain requirements for college and university IDs to be used as voter ID in Wisconsin are irrational and seek to enjoin those and only those specific requirements.

3.      Current Wisconsin law requires that a college or university student enrolled in a postsecondary educational institution in Wisconsin may use the student's campus photo ID card, if it contains the person's name, photo, issuance date, an expiration date not more than two years after the issuance date, and the student's signature. WIS. STAT. § 5.02(6m)(f). Additionally, the student must also present or submit proof of current enrollment, such as an enrollment verification letter or tuition fee receipt. Following the U.S. Court of Appeals for the Seventh Circuit's decision in *Luft v. Evers*, affirming this Court's permanent injunction allowing the use of *expired* college and university student

ID cards because, as required by law, WIS. STAT. § 5.02(6m)(f), college student voters present separate proof of current enrollment, *see One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 904 (W.D. Wis. 2016), *order enforced*, 351 F. Supp. 3d 1160 (W.D. Wis. 2019), *and aff'd in part, vacated in part, rev'd in part sub nom. Luft v. Evers*, 963 F.3d 665, 677 (7th Cir. 2020), the requirements that college and university ID cards bear issuance and expiration dates are vestigial, serve no purpose, and are therefore irrational. The state has an important regulatory interest in ensuring that voters in Wisconsin live in Wisconsin and, under *Luft*, may even enact redundant requirements to further that interest, *so long as* those state law requirements are rational. 963 F.3d at 677 (rejecting idea that "redundant requirements . . . are *invariably* irrational") (emphasis added). However, municipal clerks and poll workers now have no need or justification to review the issuance date and expiration date, if any exist, and, therefore, the requirements that these features be present on a college or university ID are irrational.

4.     At a minimum, to survive review for rationality, a requirement must serve a rational purpose and actually be used by state and local officials and/or their agents and volunteers to serve that rational purpose. The Seventh Circuit stated in *Luft* that "[m]any a lawyer prefers a belt-and-suspenders approach," *id.*, but crucially in this metaphor, *both* belt and suspenders are worn. Many systems from computer to nuclear to food security have multiple, redundant checks and safeguards, but these necessary checks are *actually* performed, and these safeguards are *actually* utilized. Here, by stark contrast, following *Luft*, Defendants, the members and Administrator of the Wisconsin Elections Commission ("WEC" or "the Commission"), and the municipal clerks who take

3

their instructions on implementing Wisconsin election law from them, will no longer do anything with the issuance dates and expiration dates on college or university ID cards beyond simply noting that that information is present. That now-meaningless, perfunctory task can serve no anti-fraud interest or any other interest that the Wisconsin Legislature, Defendants Ann Jacobs, Mark L. Thomsen, Julie M. Glancey, Marge Bostelmann, Dean Knudson, and Robert F. Spindell, Jr., the Commissioners of the WEC, or Meagan Wolfe, the Administrator of the WEC (collectively, "the Wisconsin Elections Commission Defendants"), Wisconsin's municipal clerks, or anyone else has ever identified. Accordingly, the issuance and expiration date requirements are now clearly unconstitutional.[1] Additionally, the requirement that the expiration date be not more than two years after the issuance date is similarly irrational in light of the injunction permitting the use of expired college and university ID cards.

5.      The requirement that the student ID card contain the student's signature also serves no purpose and is irrational. First, the voter ID law does not require election officials and poll workers to verify that any signature on the ID matches the voter's signature on the poll book or the voter's signature on the voter registration form. Second, no other category of voter IDs is required to contain a signature. WIS. STAT. § 5.02(6m). In fact, a number of forms of valid, accepted voter ID, such as Veterans Health Identification Cards ("VHICs") issued by the U.S. Department of Veterans Affairs and some tribal ID cards, do not even contain signatures. And finally, the voter must always sign the

---

[1] Moreover, a number of valid forms of voter ID never expire or remain valid indefinitely. Requiring an issuance date and expiration date not more than two years after the issuance date does not advance the state's regulatory interest and is therefore irrational.

pollbook before receiving a ballot. After an election, it is *that* signature that may be compared to the signature on a voter registration form to advance the governmental purpose of detecting and prosecuting voter fraud. Since the voter ID law was enacted in 2011, the Commission, and its predecessor the Government Accountability Board, have consistently stated that voter IDs are valid and must be accepted without any comparison of any signature on the voter ID, if any exists, to the poll book signature or the signature on the absentee ballot request form or the absentee ballot certificate envelope. It is not up to election officials and Election Day poll workers to verify any signature on a voter ID. Therefore, requiring a signature on a college or university ID used as voter ID serves no function and lacks a rational basis.

6.     Thirty-five states have enacted voter identification requirements: some strict photographic identification requirements, others with more expansive lists that include non-photo forms of ID.[2] Twenty-eight of these states' voter ID laws permit college and university students to use their campus photo IDs as voter ID. Wisconsin's is the only

---

[2] ALA. CODE § 17-9-30; ALASKA STAT. § 15.15.225; ARIZ. REV. STAT. § 16-579; ARK. CONST. amend. 51, § 13; ARK. CODE ANN. §§ 7-5-305, 7-5-324; COLO. REV. STAT. ANN. §§ 1-1-104(19.5)(a), 1-7-110; CONN. GEN. STAT. ANN. § 9-261; DEL. CODE ANN. tit. 15, § 4937; FLA. STAT. ANN. § 101.043; GA. CODE ANN. §§ 21-2-417, 21-2-417.1; HAW. REV. STAT. § 11-136; IDAHO CODE ANN. §§ 34-1106, 34-1113, 34-1114; IND. CODE. ANN. §§ 3-5-2-40.5, 3-11-8-25.1; IOWA CODE § 48A.7A; KAN. STAT. ANN. §§ 25-2908, 25-1122, 8-1324; KY. REV. STAT. ANN. § 117.227; 31 KY. ADMIN. REGS. 4:010; LA. REV. STAT. ANN. § 18:562; MICH. COMP. LAWS ANN. § 168.523; MISS. CODE ANN. § 23-15-563; MO. REV. STAT. § 115.427; MONT. CODE ANN. § 13-13-114; N.H. REV. STAT. ANN. § 659:13; N.C. GEN. STAT. § 163A-1145.1; N.D. CENT. CODE § 16.1-05-07; OHIO REV. CODE ANN. § 3505.18; OKLA. STAT. ANN. tit. 26, § 7-114; R.I. GEN. LAWS § 17-19-24.2; S.C. CODE ANN. § 7-13-710; S.D. CODIFIED LAWS §§ 12-18-6.1, 12-18-6.2; TENN. CODE ANN. § 2-7-112; TEX. ELEC. CODE ANN. §§ 63.001, 63.0101; UTAH CODE ANN. §§ 20A-1-102, 20A-3-104; VA. CODE ANN. § 24.2-643; WASH. REV. CODE ANN. § 29A.40.160; W. VA. CODE ANN. § 31-3-34; WIS. STAT. §§ 5.02(6m), 6.79(2a).

voter ID law on that list that requires a student ID to have only a two-year life span, even if it is issued by a four-year institution, and the only voter ID law that requires students to show separate proof of current enrollment along with their college or university photo ID card. Finally, only Wisconsin rejects college or university IDs if they lack a signature.

7.    Every fall, tens of thousands of freshmen enroll in postsecondary educational institutions in Wisconsin.[3] Typically, they have less than two months before a November general election to register to vote, often for the first time in their lives, learn of and comply with the nation's only documentary proof of residence requirement for *all* voter registration applicants, WIS. STAT. § 6.34(2), learn the state has a strict photographic voter ID law, obtain compliant forms of campus photo ID from their schools, and learn the location of their polling places. As can be seen from the declarations of Cassandra Abarca and Jessica Gomez, students at Alverno College and Marquette University, respectively, college and university students who lack other forms of accepted voter ID are deprived of their right to vote unless they obtain a different, compliant student ID card that, upon information and belief, some but not all Wisconsin colleges and universities offer *upon request* at designated sites on campus.[4] This request for a separate, compliant form of student ID is a wholly unnecessary and unjustified step in the voting process that can only deter and/or delay voting in Wisconsin. Lacking an important

---

[3] *See, e.g.*, University of Wisconsin System, Student Statistics, Fall 2017-18, New Freshman Headcount by Institution, *available at* https://pollux.uwsa.edu/PRODUCTION/ssbreports/index.php/HeadCountReports/getSingleYearReportByInstitution/single/pdf/R_B200_tot/201718/0 (last visited Aug. 12, 2020).

[4] *See* dkt. 2, Cassandra Abarca Declaration ¶¶ 4–6; dkt. 3, Jessica Gomez Declaration ¶ 3.

regulatory interest to impose these useless and irrational requirements for college and university student ID cards which needlessly force students to obtain a different campus photo ID card in order to vote, Defendants violate the First and Fourteenth Amendments to the U.S. Constitution and 52 U.S.C. § 10101(a)(2)(B).

8.      This action is brought under 42 U.S.C. § 1983 against Defendants' unlawful deprivations of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and federal law, specifically 52 U.S.C. § 10101(a)(2)(B).

## JURISDICTION & VENUE

9.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1357 because this case arises under the United States Constitution and because this case seeks equitable and other relief for the deprivation of rights under color of state law.

10.     This Court has jurisdiction to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

11.     This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     This Court has personal jurisdiction over the WEC Defendants, who are all sued in their official capacities.  The WEC Defendants are state officials who reside in Wisconsin, and the WEC is based in Madison, Wisconsin.

13.     Venue is appropriate in the Western District of Wisconsin, under 28 U.S.C. § 1391(b)(1), because the WEC Defendants are state officials, and the WEC is based in Madison, Wisconsin.

## PARTIES

14.     Plaintiff Common Cause is a nonprofit corporation organized and existing under the laws of the District of Columbia. Common Cause is one of the nation's leading democracy reform organizations and has over 1.2 million members and offices in 35 states and the District of Columbia. Since its founding in 1970, Common Cause has been dedicated to the promotion and protection of the democratic process, such as the right of all citizens, including its eligible members, to be registered for and vote in fair, open, and honest elections. Common Cause conducts significant nonpartisan voter protection, advocacy, education, and outreach activities to ensure that voters are registered to vote and are able to vote and have their ballots counted as cast. Common Cause also advocates for policies, practices, and legislation—such as automatic and same-day registration—that facilitate voting for eligible voters and ensure against disenfranchisement.  Common Cause opposes efforts that burden registration and/or voting, including restrictive voter identification laws, like the one passed in Wisconsin, that could potentially chill citizens' rights to vote.

15.     Plaintiff Common Cause Wisconsin, which is part of and incorporated under the same bylaws as the national organization Common Cause, has diverted and will continue to divert organizational resources, staff time, and money to inform college and university students on whether their campus IDs are compliant with the voter ID law and, if not, on how to obtain a compliant college or university ID card. But for these unconstitutional requirements for college and university IDs to be used as voter ID in Wisconsin, Common Cause Wisconsin would not need to divert organization resources,

staff time, and money from its core mission activities to ensure students can cast a ballot that will be counted. In the 2016 and 2018 general election cycles, Common Cause Wisconsin's staff devoted an estimated 157 hours to student voter ID work that would not have been necessary but for these unconstitutional requirements. All told, this cost the organization an estimated $3,454 in salary related to the staff's research on university ID issuance policies and practices and sustained outreach to campuses on the voter ID requirement. Beginning in early 2016, Common Cause Wisconsin rolled out an extensive research and outreach campaign directed at administrators and officials at every college, university and technical college in Wisconsin in order to: (a) gather information on whether each institution's standard photo ID complies with the voter ID law; (b) determine what alternatives are available to students for voting if the school's standard photo ID is non-compliant, *i.e.* compliant IDs issued upon request; (c) provide education and resources about using college and university ID cards as voter ID; and (d) provide information, guidance, and best practices on offering a compliant ID to those schools struggling to implement a voter ID-compliant student ID. For each individual postsecondary institution, Common Cause Wisconsin did research online, made a series of phone calls, and/or wrote emails. Common Cause Wisconsin compiled its research and used that to create, update, and disseminate a "one-stop" downloadable online resource with information on the use of a student ID as a voter ID at every Wisconsin college, university, and technical college in the state. All of these activities took staff time, money, and other resources that could have been used for the organization's core mission activities.

16.     Common Cause Wisconsin has continuously developed, updated, and distributed educational materials for college and university student voters, including hard copy fact sheets, online student voting guides, and graphics. This included the "student ID as voter ID" fact sheet, which has been continuously updated since 2016, used and shared as a resource in outreach to university campus contacts, coalition partners, the press, and advocacy groups working with student voters and distributed online via emails, press releases, and Common Cause Wisconsin's website. Common Cause Wisconsin has also engaged in a variety of email and social media messaging on whether and how students can obtain a compliant student ID that can be used as a valid voter ID. Common Cause Wisconsin staff are currently reviewing and updating the organization's existing research and materials on college and university ID compliance with the voter ID law by contacting college and university administrators. The organization's staff will again be educating and engaging in outreach to Wisconsin college and university students about securing a compliant college or university ID card for the November general election. These efforts are required because of the challenged, unconstitutional requirements, and have diverted and will continue to divert resources, staff time, and money away from Common Cause Wisconsin's core mission activities. All of these activities, which Common Cause Wisconsin is only engaged in because of the unconstitutional requirements challenged in this case, are ongoing, as schools change processes and/or update their websites or the information they share with students. Common Cause Wisconsin staff continue to communicate with college and university administrators, advocate for changes to student IDs that would make it easier for

students to vote, and update the organization's information on how to obtain a compliant student ID card. These efforts, which divert staff time, resources, and money, constitute an ongoing injury to Common Cause Wisconsin.

17.     Plaintiff Benjamin R. Quintero is a sophomore at Milwaukee School of Engineering ("MSOE"). He is a United States citizen, 20 years old, and a resident of Milwaukee, Wisconsin.  He has never been disenfranchised by reason of a felony conviction or court order. Benjamin wants to vote in Wisconsin but cannot because he does not have any of the types of photo ID that satisfy the Wisconsin voter ID requirement. He only has the regular MSOE student ID card that lacks an issuance date, expiration date, and signature.

18.     Defendants Ann Jacobs, Mark L. Thomsen, Julie M. Glancey, Marge Bostelmann, Dean Knudson, and Robert F. Spindell, Jr. are sued in their official capacities as the members of the Wisconsin Elections Commission.

19.     Defendant Meagan Wolfe is sued in her official capacity as the Administrator of the Wisconsin Elections Commission.

## FACTUAL ALLEGATIONS

### A. Wisconsin's Voter ID Requirement and Its Requirements for College and University Student Photo ID Cards

20.     In 2011, the Wisconsin Legislature enacted Act 23, which created a strict photographic voter identification requirement for all voters, regardless of whether they vote in person on or before Election Day or by mail. WIS. STAT. §§ 6.79(2)(a), 6.86(1)(ar), 6.87(1).  Although in-person voters must show their voter ID to the poll worker, a mail-in absentee voter must "enclose a copy of his or her proof of identification or any

authorized substitute document with his or her [absentee ballot] application." WIS. STAT.

§ 6.87(1).

21.     Wisconsin accepts the following forms of photo ID as valid voter ID:

(a) One of the following documents that is unexpired or if expired has expired after the date of the most recent general election: 1. An operator's license issued under ch. 343. 2. An identification card issued under s. 343.50. 3. An identification card issued by a U.S. uniformed service. 4. A U.S. passport.

(b) A certificate of U.S. naturalization that was issued not earlier than 2 years before the date of an election at which it is presented.

(c) An unexpired driving receipt under s. 343.11.

(d) An unexpired identification card receipt issued under s. 343.50.

(e) An identification card issued by a federally recognized Indian tribe in this state.

(f) An unexpired identification card issued by a university or college in this state that is accredited, as defined in s. 39.30(1)(d), that contains the date of issuance and signature of the individual to whom it is issued and that contains an expiration date indicating that the card expires no later than 2 years after the date of issuance if the individual establishes that he or she is enrolled as a student at the university or college on the date that the card is presented.

(g) An unexpired veterans identification card issued by the veterans health administration of the federal department of veterans affairs.

WIS. STAT. § 5.02(6m). As can be seen from the above statute, college and university IDs must contain the student voter's name, photo, issuance date, an expiration date not more than two years after the issuance date, and the student's signature. WIS. STAT. § 5.02(6m)(f).  Students using their college or university photo ID card to vote must also present separate proof of current enrollment.  *Id*. This proof of current enrollment can be "an enrollment verification letter, class schedule, or tuition fee receipt."[5] In 2014, the WEC's predecessor, the Government Accountability Board, issued guidance that defined

---

[5] G.A.B. Releases Top Things Voters Need to Know about Photo ID (Feb. 1, 2016), *available at* https://elections.wi.gov/node/3862 (last visited Aug. 11, 2020).

proof of current enrolment as "an enrollment verification form, class schedule, tuition receipt, or any other document which establishes that the student is enrolled . . ."[6] The current guidance to voters on the state's MyVote Wisconsin webpage, which is published and maintained by Defendants, makes clear that the list of examples of proof of current enrollment is a non-exhaustive list: "The university or college ID must be accompanied by a separate document that proves enrollment, *such as* a tuition fee receipt, enrollment verification letter, or class schedule." (Emphasis added).[7] The Election Day Manual is consistent with this: "Proof of enrollment includes, but is not limited to, a fee receipt, class schedule or an enrollment verification form."[8] This separate proof of current enrollment can be shown or submitted as a physical document or electronically displayed on a smart phone, tablet, or laptop.[9]

22.     In order to be used as voter ID, Wisconsin driver's license and state ID cards issued by the Wisconsin Department of Transportation, specifically the Wisconsin Department of Motor Vehicles, military identification cards, and U.S. passports must be unexpired or have expired after the date of the most recent general election. Wis. Stat. §

---

[6] G.A.B. Memorandum, Voter Photo ID Reminders for 2014 General Election Voter Photo ID Guidance 2014-3 (Sept. 25, 2014), at 3, *available at* https://elections.wi.gov/sites/default/files/memo/20/photo_id_guidance_2014_3_reminders_9_25_14_pdf_17534.pdf (last visited Aug. 11, 2020).

[7] MyVote Wisconsin, *available at* https://myvote.wi.gov/en-us/PhotoIDRequired (last visited Aug. 11, 2020).

[8] Wisconsin Elections Commission, Election Day Manual for Wisconsin Election Officials ("Election Day Manual") (Jan. 2020), at 59, *available at* https://elections.wi.gov/sites/elections.wi.gov/files/2020-07/Election%20Day%20Manual%20%282020-01%29_1.pdf (last visited Aug. 11, 2020).

[9] MyVote Wisconsin, *available at* https://myvote.wi.gov/en-us/PhotoIDRequired (last visited Aug. 11, 2020).

5.02(6m)(a). On information and belief, certain forms of military ID bear the code "INDEF" for indefinite duration. Tribal government-issued IDs may be expired or unexpired, Wis. Stat. § 5.02(6m)(e), but, in any event, frequently do not contain issuance and expiration dates because, like certain forms of military ID, they never expire. A naturalization certificate must be issued not more than two years before the election in which it is presented as voter ID. Wis. Stat. § 5.02(6m)(b). The remaining forms of valid voter ID must be unexpired. Wis. Stat. § 5.02(6m). However, in *One Wisconsin Institute v. Thomsen*, 198 F. Supp. 3d 896, 961–62 (W.D. Wis. 2016), this Court ordered Defendants to accept expired college and university IDs, and the Seventh Circuit in *Luft v. Evers* has now affirmed that order, albeit on different grounds. *Luft*, 963 F.3d at 677. *See infra* at Part B.

23.     Many of the regular college or university photo IDs issued to all students lack an issuance date, an expiration date, an expiration date no more than two years after the issuance date, and/or a digitally-printed signature or even a strip for the student to sign. Some of these colleges and universities offer, upon student request, a separate compliant photo ID that can be used as voter ID. Some do not.

### B. Prior Litigation Regarding the Use of College and University IDs as Voter ID in Wisconsin

24.     In 2016, this Court decided *One Wisconsin Institute, Inc. v. Thomsen*, 198 F. Supp. 3d 896 (W.D. Wis. 2016). The plaintiffs in *One Wisconsin Institute* had brought a claim alleging that there was no rational basis to reject the use of expired forms of otherwise-valid IDs. This Court noted that, as to college and university ID cards, the state's requirement that the IDs be unexpired was irrational and unjustified because of the separate proof of current enrollment requirement:

The three requirements in Wis. Stat. § 5.02(6m)(f) are redundant: (1) the ID card itself must be unexpired; (2) the card must have an expiration date that is no more than two years after its date of issuance; and (3) the voter must present proof of current enrollment.  If each of these requirements provided some additional level of protection against former students using their IDs to vote, then those requirements might be rational. But as it stands, defendants have not explained why any requirement beyond proof of current enrollment is necessary to protect against fraudulent voting with a college or university ID. . . .

[T]he state's concern with ensuring that only current students vote with student IDs may be rational. But Wis. Stat. § 5.02(6m)(f) adequately addresses that concern by requiring a voter to present proof of enrollment with the student ID.

*Id*. at 961–62. Finding the requirement that the college or university ID be unexpired redundant, unnecessary, and irrational, the Court enjoined that specific requirement:

Adding the requirement that a voter's college or university ID be unexpired does not provide any additional protection against fraudulent voting. If anything, this measure prevents otherwise qualified voters from voting simply because they have not renewed their IDs since beginning school. Thus, even under an exceedingly deferential rational basis review, the state has failed to justify its disparate treatment of voters with expired IDs. The court concludes that requiring unexpired college or university IDs violates the Fourteenth Amendment.

*Id*. at 962.

25.    However, because the plaintiffs only sought an injunction permitting the use of expired IDs, not the elimination of the issuance date and expiration date requirements, this Court's ruling was limited to the requested relief. This Court expressly stated that its order did not eliminate the requirement that student IDs bear issuance dates and expiration dates not more than two years after the issuance date:

***[College and university students] must still comply with the other requirements of Wis. Stat. § 5.02(6m)(f).*** Plaintiffs have not directed their rational basis challenge to the requirement that a voter with a college or university ID also present proof of enrollment at the issuing institution. Nor

> have plaintiffs challenged the rational basis for permitting only IDs that expire no more than two years after issuance. These requirements still apply. The only thing that will change is that the ID card that a college or university student actually presents at the polls can be expired.

*Id.* (emphasis added). In footnote 24, this Court suggested that the issuance date and expiration date requirements also serve no purpose but noted those requirements were beyond the scope of the plaintiffs' challenge: "Without the requirement that a voter present an unexpired college or university ID, it seems unnecessary to regulate the ID's expiration date. ***But that is outside the scope of plaintiffs' challenge***, and so the court will leave it to the state to determine whether this provision is still necessary." *Id.* at 961–62 & n.24 (emphasis added). Therefore, these useless, vestigial, and therefore irrational statutory requirements for college and university IDs remain in place as technical requirements, and those features must still appear on the student ID if presented as voter ID. This Court explicitly noted the ordered relief did not preclude the state from enforcing those technical requirements.

26.     Because the district court did not rule on the constitutionality of the issuance and expiration dates, the Seventh Circuit's decision in *Luft* does not consider their constitutionality either. 963 F.3d at 677. Instead, *Luft* has merely affirmed the district court's injunction against the requirement that a college or university ID card be "unexpired," where the voter is required to present or submit separate proof of current enrollment. *Id.* Even after the Defendant-Appellants in *Luft* moved for "clarification on which elements of the student ID statute will be enforceable" going forward, *see* Case No. 16-3003, dkt. 101 at 6, the Seventh Circuit replied simply as follows:

> Our opinion holds that the state may not require student IDs to be unexpired, when the student provides some other document demonstrating current enrollment. The point of our decision is that requiring two documents from students, but not other voters, needs justification, which has not been supplied. But a student who appears at the polls with an expired student ID card, and without proof of current enrollment, need not be allowed to vote.

*See* dkt. 102 at 2. *Luft* has nothing to say about the issuance and expiration dates that must appear on the face of the college or university ID card under Wisconsin law because, as noted above, the plaintiffs in *One Wisconsin Institute* did not challenge those requirements. Permitting an expired ID does not mean that an ID must have an issuance date or expiration date at all; on the contrary, this lawsuit argues that it is irrational to enforce these technical, vestigial requirements in light of the fact that an expired ID may be used as students are required to present separate proof of current enrollment. Municipal clerks and poll workers now have no need or justification to review the issuance date and expiration dates, if any exist. This lawsuit picks up where *One Wisconsin Institute* left off and respectfully asks this Court to take that further step and enjoin the college and university ID issuance date, expiration date, and two-year expiration requirements as unconstitutional.

### C.   In-Person and Mail-In Voting Procedures

**1.   Because *expired* college and university IDs can be used in conjunction with proof of current enrollment, it is unnecessary and irrational to enforce the requirements that these IDs bear issuance and expiration dates.**

27.   In order to cast a ballot, a voter must be registered to vote in Wisconsin. Residency at one's address for at least 28 days prior to an election is one of the eligibility criteria for voting in Wisconsin.  WIS. STAT. § 6.02. Voter registration applicants affirm on

penalty of perjury that they satisfy this requirement.[10] Additionally, Wisconsin has the nation's only currently-enforced documentary proof of residence requirement for *all* registration applicants who are not overseas or in the military: "[U]pon completion of a registration form prescribed under s. 6.33, each eligible elector who is required to register under s. 6.27, who is not a military elector or an overseas elector, shall provide an identifying document that establishes proof of residence under sub. (3)." WIS. STAT. § 6.34(2).[11] According to Defendants' webpages and other election officials in Wisconsin, "[a]ll Proof of Residence documents must include the voter's name and current residential address."[12] Therefore, the voter registration process, as implemented, doubly confirms that a person is a resident of the state and municipality.

28.     Wisconsin state law setting forth the in-person voting procedure provides that: "[E]ach eligible elector, before receiving a serial number, shall state his or her full name and address and present to the officials proof of identification." WIS. STAT. § 6.79(2)(a). The same statute instructs election inspectors (the technical name for poll workers) stationed at the polling places to verify only the name and photograph of the voter: "The officials shall verify that the name on the proof of identification presented by the elector conforms to the name on the poll list or separate list and shall verify that any photograph appearing on that document reasonably resembles the elector." *Id*. The

---

[10] Wisconsin Voter Registration Application, Form EL-131, *available at* https://elections.wi.gov/sites/elections.wi.gov/files/2020-06/El-131%20-%20%28REV%202020-06%29.pdf (last visited Aug. 12, 2020).

[11] A list of acceptable forms of proof of residence is available on the Wisconsin Elections Commission's website MyVote Wisconsin's Proof of Residence page. *See* https://myvote.wi.gov/en-us/ProofofResidence (last visited Aug. 12, 2020).

[12] *Id*.

current version of the Election Day Manual lists the specific steps a poll worker must take to verify a photo ID.[13] First, poll workers must confirm that the college or university ID card bears a name, photo, issuance date, expiration date no later than two years after the issuance date, and the student's signature, and also confirm that the student has separate proof of current enrollment.[14]  Next, the poll worker must "verify that the name on the ID conforms to the name on the poll list"; "verify that any photograph on the proof of identification reasonably resembles the elector" (for in-person voters only); and "verify that the proof of identification is unexpired or, if expired, it meets the expiration specifications listed above."[15]

29.    Mail-in absentee voters must submit a copy of their photo ID with their absentee ballot application, unless they are permanent, mail-in absentee voters, have previously voted mail-in absentee with the same name and at the same residential address, or are military or overseas voters.  WIS. STAT. §§ 6.87(1), 6.87(4)(b)2–(b)3.  For mail-in absentee voters' IDs, the municipal clerk is only required to verify the name on the photo ID. WIS. STAT. § 6.87(1). There is of course no face to which the photo can be compared. Otherwise, the instructions for verifying the voter IDs of in-person voters and mail-in absentee voters do not differ.

30.    Wisconsin election law provides for and ensures Wisconsin residency and residential address verification through other, more effective means than requiring the ID to bear an issuance date and an expiration date. But while *Luft* makes clear that

---

[13] Election Day Manual, *supra* note 8, at 58–60.
[14] *Id*. at 58–59.
[15] *Id*. at 59-60.

redundant requirements are permissible, they must be rational. 963 F.3d at 677. Here, the injunction in *One Wisconsin Institute*, 198 F. Supp. 3d at 961–62, now affirmed by *Luft*, 963 F.3d at 677, requires Defendants to accept expired college and university ID cards where presented with the requisite separate proof of current enrollment and, for that reason, it is no longer rational to enforce the issuance date and expiration date requirements. These technical requirements are vestigial elements of any college or university ID card, because even if they happen to appear, there is no point reviewing them. Wisconsin law and Defendants' procedures and guidance on Wisconsin law do not instruct the state's municipal clerks or poll workers to conduct any substantive review or verification of the issuance and expiration dates because that review or verification would be meaningless and irrational. Wis. Stat. § 5.02(6m) only required that the ID be "unexpired," and by this Court's order, that requirement is enjoined. Accordingly, it is wholly irrational to continue enforcing the issuance date and expiration date requirements for Wisconsin college and university IDs used as voter ID.

31.     As further evidence of the irrationality of these requirements, not every valid ID in Wis. Stat. § 5.02(6m) is required to contain an issuance date or expiration date. Aside from college and university ID cards, the only other valid ID for which verification of the time of issuance is required is a naturalization certificate. Wis. Stat. § 5.02(6m)(b). Naturalization certificates of course contain issuance dates, so there is no express statutory requirement that they contain this information. *Id*. Verification of the time of expiration is required for many other forms of valid ID, but not for all of them. On information and belief, certain forms of military ID that can be used as valid voter ID do

not contain issuance dates or expiration dates, but rather bear the code "INDEF" for indefinite duration. Additionally, many tribal government-issued IDs frequently do not contain issuance dates or expiration dates because, like certain forms of military ID, they never expire.

### 2. The two-year expiration requirement is also irrational.

32.     Wisconsin law requires that college or university ID cards contain an expiration date that is no more than two years after the issuance date listed on the card. WIS. STAT. §§ 5.02(6m)(f). There is no rational basis for this requirement. There are two-year institutions and four-year institutions in Wisconsin, and requiring a student at a four-year institution to obtain a new ID card every two years is irrational. Even more importantly, this Court has held and the Seventh Circuit has affirmed that expired college and university ID cards may be used when presented, as required by current Wisconsin law, in conjunction with separate proof of current enrollment. *Luft*, 963 F.3d at 677. For these reasons, there is no rational basis to enforce the two-year expiration requirement.

### 3. By law, signatures on voter IDs, if any are even present, are not used for any signature comparison, and therefore, requiring a signature on a college and university ID card used as voter ID is irrational.

33.     For in-person voters or mail-in absentee voters, there is no mandate in the Wisconsin Election Code to compare any signature on the voter ID, if any exists, to any other signature. WIS. STAT. § 6.79(2)(a); WIS. STAT. § 6.87(1). The Election Day Manual makes no mention of signature verification and omits signatures from a list of the voter

ID's "relevant information (name, photo, expiration date)."[16] Additionally, since the voter ID law was enacted in 2011, consistent with Wisconsin law, the WEC, as well as its predecessor the Government Accountability Board, have never issued instructions requiring the comparison of a signature on the voter ID, if any exists, with the voter's signature on the poll book or voter registration record.[17] It is not for election officials and Election Day poll workers to determine the authenticity of a signature. This makes sense given a number of forms of valid voter ID, such as Veterans Health Identification Cards ("VHICs") issued by the U.S. Department of Veteran Affairs and some ID cards issued by tribal governments, do not even contain signatures.

34.    During in-person voting, after the voter ID is verified, poll workers require the voter to sign the poll book:

> The officials shall then require the elector to enter his or her signature on the poll list, supplemental list, or separate list maintained under par. (c) unless the elector is exempt from the signature requirement under s. 6.36(2)(a). The officials shall verify that the name and address stated by the elector conform to the elector's name and address on the poll list.

WIS. STAT. § 6.79(2)(a). Poll workers are required to verify that the voter's stated name and address match the name and address listed in the poll book but are not instructed to engage in any signature comparison of any kind. The Election Day Manual explicitly states: "Election inspectors are not required to compare the voter's signature to the

---

[16] *Id*. at 59.
[17] *Id*. at 60-61.

signature on the proof of identification."[18] The voter's signature on an absentee ballot request form stands in lieu of signing the poll book.[19]

35.    Wisconsin now allows municipal clerks to use electronic poll books instead of paper poll books. In its Wisconsin E-Poll Book Show and Tell training module, the WEC informed municipal clerks and their staff that the check-in process also requires voter signatures.[20] First, a screen comes up for voter ID verification, and, in keeping with Wisconsin law, there is no mention of signature comparison or the possibility of denying a ballot to a voter due to a perceived signature non-match. Next, the electronic poll book must accept the voter's signature. The voter signs the screen on a tablet or a signature pad with a stylus or finger to create a digitized signature that appears on screen. Notably, the voter's signature from his or her registration application form does not appear on screen. Instead, the e-pollbook signature is digitally stored for future comparison to the voter registration form signature, should that become necessary in any WEC or law enforcement investigation. Nothing instructs the poll worker to compare the digitally-created signature to the voter ID signature, if any even exists. On information and belief, the older Wisconsin Government Accountability Board report on e-pollbooks from 2014 set forth much the same procedure:

---

[18] *Id*. at 60.

[19] Wisconsin Elections Commission, Form EL-121, Wisconsin Application for Absentee Ballot, *available at* https://elections.wi.gov/sites/elections.wi.gov/files/2020-06/EL-121%20Application%20for%20Absentee%20Ballot%20%28rev.%202020-06%29.pdf (last visited Aug. 12, 2020).

[20] Wisconsin Elections Commission, Wisconsin E-Poll Book Show and Tell Training Module, *available at* http://elections.wi.gov/publications/video/WI_EPollBook_Show_and_Tell (October 27, 2017), at 7:11–12:44 (last visited Aug. 11, 2020).

> Once the voter is verified as being registered, the voter is directed to sign the poll book. Using an electronic poll book, the voter can sign using a digital signature pad similar to using a credit card at a store or they can sign directly on the screen of the device. The signature can be digitally captured and printed on a hardcopy receipt or label. Alternatively, a receipt or label can be generated with a line for the voter to sign in order to capture a "wet" signature.[21]

Accordingly, the requirement that a college or university ID card bear the student's signature does not serve an important regulatory interest. This requirement is not actually being used for any purpose and is therefore manifestly unnecessary and irrational.

## CLAIMS FOR RELIEF

### COUNT ONE
**(College or University ID Issuance Date and Expiration Date Requirements Violate First and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983)**
**(All Plaintiffs)**

36.    The factual allegations contained in the preceding paragraphs are incorporated into Count One, as though fully set forth herein.

37.    Under the First and Fourteenth Amendments to the U.S. Constitution, any burden on the right to vote must be balanced against a state's interest in that requirement. The Supreme Court has set forth the following test:

> [T]he rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992). But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth

---

[21]   Public access to the following link is now denied: http://elections.wi.gov/clerks/misc/electronic-poll-books.   Plaintiffs plan to request this document in discovery.

Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson*, 460 U.S., at 788, 103 S.Ct., at 1569–1570; *see also id*., at 788–789, n. 9, 103 S.Ct., at 1569–1570, n. 9.

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

38.     Wisconsin state law requires that college and university student ID cards must bear an issuance date and an expiration date not more than two years after the issuance date in order to be used as voter ID. The federal courts have now struck down the requirement that college and university ID cards be unexpired, so these issuance date and expiration date requirements will no longer be used for any purpose set forth in Wisconsin law and are therefore unconstitutionally irrational.

39.     The constitutional rights of students who have no other form of valid voter ID are violated by these requirements. These unnecessary, useless, and irrational requirements cannot be justified by any legitimate and important regulatory interest or any rational basis.

40.     Since these issuance date and expiration date requirements are not justified by any legitimate and important regulatory interest, they violate the First and Fourteenth Amendments to the U.S. Constitution.

41.     But for the unnecessary, useless, and irrational issuance date and expiration date requirements, Plaintiffs Common Cause and Common Cause Wisconsin would not need to educate new college and university students on how to obtain a voter ID that contains these required elements from their schools and help them do so. While these requirements are in force, Plaintiff Benjamin R. Quintero cannot use his college photo ID card to vote.

42.     At all relevant times, Defendants have acted under color of state law.

43.     Defendants, acting under color of state law, have violated Plaintiffs' rights under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

## COUNT TWO
**(College or University ID Two-Year Expiration Requirement Violates First and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983) (All Plaintiffs)**

44.     The factual allegations contained in the preceding paragraphs are incorporated into Count Two, as though fully set forth herein.

45.     Under the First and Fourteenth Amendments to the U.S. Constitution, any burden on the right to vote must be balanced against a state's interest in that requirement. The Supreme Court has set forth the following test:

> [T]he rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992). But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson*, 460 U.S., at 788, 103 S.Ct., at 1569–1570; *see also id.*, at 788–789, n. 9, 103 S.Ct., at 1569–1570, n. 9.

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

46.     Wisconsin law requires that college or university ID cards contain an expiration date that is no more than two years after the issuance date listed on the card. WIS. STAT. §§ 5.02(6m)(f).

47.     There is no rational basis for this requirement. There are two-year institutions and four-year institutions in Wisconsin, and requiring a student at a four-year institution to obtain a new ID card every two years is irrational.

48.     Even more importantly, this Court has held and the Seventh Circuit has affirmed that expired college and university ID cards may be used when presented, as required by current Wisconsin law, in conjunction with separate proof of current enrollment. For this reason, there is no rational basis to enforce the two-year expiration requirement.

49.     At all relevant times, Defendants have acted under color of state law.

50.     Defendants, acting under color of state law, have violated Plaintiffs' rights under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

**COUNT THREE**
**(College or University ID Signature Requirement Violates First and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983) (All Plaintiffs)**

51.     The factual allegations contained in the preceding paragraphs are incorporated into Count Three, as though fully set forth herein.

52.     Under the First and Fourteenth Amendments to the U.S. Constitution, any burden on the right to vote must be balanced against a state's interest in that requirement. The Supreme Court has set forth the following test:

> [T]he rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992). But when a state election law provision imposes only

27

"reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson*, 460 U.S., at 788, 103 S.Ct., at 1569–1570; *see also id.*, at 788–789, n. 9, 103 S.Ct., at 1569–1570, n. 9.

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

53.    Wisconsin state law requires that college and university student ID cards must bear the student's signature in order to be used as voter ID.

54.    The constitutional rights of student voters who have no other form of valid voter ID are violated by the Wisconsin voter ID law. This unnecessary, useless, and irrational signature requirement cannot be justified by any important, legitimate regulatory interest or any rational basis, as is made clear by the absence of any directive or guidance that municipal clerks or poll workers review or compare the voter ID signature, if any is present, to any other signature for that voter.

55.    Because the student ID signature requirement is not justified by any legitimate, important regulatory interest, these state actions violate the First and Fourteenth Amendments to the U.S. Constitution.

56.    But for the unnecessary, useless, and irrational signature requirement, Plaintiffs Common Cause and Common Cause Wisconsin would not need to educate new college and university students on how to obtain a voter ID with a signature from their schools. While this requirement is in force, Plaintiff Benjamin R. Quintero cannot use his college photo ID card to vote.

57.    At all relevant times, Defendants have acted under color of state law.

58.     Defendants, acting under color of state law, have violated Plaintiffs' rights under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

## COUNT FOUR

**(College or University ID Issuance Date, Expiration Date, Two-Year Expiration, and Signature Requirements Violate 52 U.S.C. § 10101(a)(2)(B) and 42 U.S.C. § 1983) (All Plaintiffs)**

59.     The factual allegations contained in the preceding paragraphs are incorporated into Count Four, as though fully set forth herein.

60.     52 U.S.C. 10101(a)(2)(B) provides that "No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election[.]"

61.     A college or university ID card is a "record or paper" within the meaning of 52 U.S.C. 10101(a)(2)(B).

62.     Because no law or case requires that college or university ID cards used as voter ID in Wisconsin be unexpired, because no clerks or poll workers are reviewing the issuance and expiration dates for any reason, and because clerks and poll workers are not comparing or verifying signatures on any voter ID used in Wisconsin in any way, the lack of any issuance date, expiration date, expiration date no more than two years after the issuance date, and/or signature on a college or university ID card is an omission that is

"not material in determining whether such individual is qualified under State law to vote in such election."

63.     Accordingly, no Wisconsin voter can be denied their right to vote based on these immaterial omissions.

64.     At all relevant times, Defendants have acted under color of state law.

65.     Defendants, acting under color of state law, have violated Plaintiffs' rights under 52 U.S.C. 10101(a)(2)(B).

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter an order granting Plaintiffs the following relief:

(a)     A declaratory judgement that WIS. STAT. §§ 5.02(6m), 6.79(2)(a), 6.86(1)(ar), and 6.87(1) violate the First and Fourteenth Amendments of the United States Constitution, to the extent they impose useless and irrational issuance date, expiration date, two-year expiration, and signature requirements on Wisconsin voters who use their college and university ID cards as voter identification;

(b)     A preliminary injunction and a permanent injunction preventing the enforcement of the issuance date, expiration date, two-year expiration, and signature requirements in WIS. STAT. §§ 5.02(6m), 6.79(2)(a), 6.86(1)(ar), and 6.87(1);

(c)     An order awarding Plaintiffs their costs, expenses, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. §1988; and

(d)     Such other or further relief as this Court deems just and proper.

**DATED:** August 13, 2020                    Respectfully submitted,

*/s/ Jon Sherman*

Jon Sherman
D.C. Bar No. 998271
Michelle Kanter Cohen
D.C. Bar No. 989164
Cecilia Aguilera
D.C. Bar No. 1617884
FAIR ELECTIONS CENTER
1825 K St. NW, Suite 450
Washington, DC 20006
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
caguilera@fairelectionscenter.org
Phone: (202) 331-0114

Lester A. Pines
Wisconsin Bar No. 1016543
Diane M. Welsh
Wisconsin Bar No. 1030940
PINES BACH LLP
122 West Washington Avenue, Suite 900
Madison, WI 53703-2718
lpines@pinesbach.com
dwelsh@pinesbach.com
Phone: 608-807-0752

*Attorneys for Plaintiffs*