IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

COMMON CAUSE and
COMMON CAUSE WISCONSIN,

                Plaintiffs,

   v.

MARK L. THOMSEN, ANN S. JACOBS,
BEVERLY R. GILL, JULIE M. GLANCEY,
DEAN KNUDSON, MARGE BOSTELMANN,
ROBERT F. SPINDELL, JR., *in their official capacities
as Commissioners of the Wisconsin Elections Commission*,
and MEAGAN WOLFE, *in her official capacity as
the Administrator of the Wisconsin Elections Commission*,

                Defendants.

OPINION and ORDER

19-cv-323-jdp

---

Like many other states, Wisconsin requires voters to present identification before submitting a ballot in a local, state, or federal election. Ten different types of identification may be used, including a Wisconsin driver's license, a U.S. passport, or a Wisconsin identification card. College and university IDs may also be used, but those must meet several statutory requirements. *See* Wis. Stat. 5.02(6m)(f). In this case, plaintiffs Common Cause and Common Cause Wisconsin challenge the statutory requirements that a student ID must display the following four things: (1) an issuance date, (2) an expiration date, (3) an expiration date not more than two years after the issuance date, and (4) a signature. Plaintiffs contend that the requirements violate the Constitution as well as a federal statute on voting rights, 52 U.S.C. § 10101(a)(2)(B). They seek a declaration that the requirements violate federal law and an injunction prohibiting their enforcement.

Both sides move for summary judgment. Dkt. 45 and Dkt. 47.[1] Plaintiffs question the usefulness of an expiration date, an issuance date, and a signature, and they make many good points. If the question were whether the requirements at issue were likely to advance an important state interest, the court might well conclude that they don't. But that isn't the standard.

To survive plaintiffs' constitutional challenge, the requirements at issue in § 5.02(6m)(f) must be rationally related to a legitimate governmental interest. To survive plaintiffs' statutory challenge, the requirements must be material to determining whether an individual is qualified to vote under Wisconsin law. The court concludes that the challenged requirements meet both of those relatively lenient standards.

The requirements that plaintiffs challenge are common features of other types of voter IDs in Wisconsin, which undermines a claim of discrimination against students. And even if Wisconsin's election laws impose more requirements on student IDs than on other types of voter ID, that doesn't make the requirements irrational. Unlike other IDs used for voting, student IDs aren't otherwise regulated by federal, state, or tribal law, so any school's ID may be different from another's. Under these circumstances, it would be rational for the legislature to conclude that statutorily imposed uniformity was appropriate for student IDs—to discourage use of fake IDs and assist election workers in recognizing valid IDs. Plaintiffs' statutory claim fails because the state statutory requirements for a voter ID are directly material to determining whether an individual is qualified to vote under Wisconsin law. For these

---

[1] Plaintiffs also move to lift the stay imposed pursuant to *Purcell v. Gonzalez*, 549 U.S. 1 (2006). *See* Dkt. 54. That motion is granted.

reasons, which are more fully explained below, the court will grant defendants' summary judgment motion and deny plaintiffs' motion.

ANALYSIS

A. Standing

The first question in every case brought in federal court is whether the court may exercise subject matter jurisdiction over the case, and one component of jurisdiction is standing. *See Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). A plaintiff has standing to sue if it shows three things: (1) it suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct of the defendant; and (3) the injury is likely to be redressed by a favorable judicial decision. *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). The injury must be an "invasion of a legally protected interest that is concrete and particularized," meaning that it "affects the plaintiff in a personal and individual way." *Id.* (internal quotation marks and alterations omitted). A plaintiff can't rely on a "generalized grievance about the conduct of government." *Id.* at 1931. Neither side raises the issue of standing in their briefs, but the court has an independent obligation to do so. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

Organizations like Common Cause and Common Cause Wisconsin can demonstrate standing through an injury to one of their members or through an injury to the organizations themselves. *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021); *Cook Cty., Illinois v. Wolf*, 962 F.3d 208, 218–19 (7th Cir. 2020). In this case, plaintiffs don't identify any injuries to their members. The parties stipulate that five out of 73 postsecondary educational institutions in Wisconsin do not provide a student ID that complies

3

with § 5.02(6m)(f), Dkt. 43, ¶ 56, but plaintiffs don't allege that their members include any students at those schools. In fact, plaintiffs haven't identified any students who have been unable to obtain a compliant ID before voting or who haven't been able to vote as a result of the requirements in § 5.02(6m)(f).[2]

Common Cause Wisconsin says that its mission includes protecting the rights of voters, and it must divert resources from other matters to educate students on the requirements of § 5.02(6m)(f) and on how to obtain a compliant ID. Dkt. 43, ¶¶ 77–79, 83–87. The need to divert resources to address the burdens of a statute is an injury in fact. *See Common Cause Indiana v. Lawson*, 937 F.3d 944, 950–52 (7th Cir. 2019); *Democratic Nat'l Comm. v. Bostelmann*, 488 F. Supp. 3d 776, 796–97 (W.D. Wis. 2020). That injury is also fairly traceable to § 5.02(6m)(f), and it could be redressed through success in this lawsuit. So the court finds that Common Cause Wisconsin has standing to sue. But plaintiffs don't allege that Common Cause has devoted any resources to educating Wisconsin students, and they don't otherwise identify any injuries suffered by the national organization, so the court will dismiss the claims of Common Cause for lack of standing.

**B. Merits**

Section 5.02(6m) of the Wisconsin Statutes lists ten types of identification that may be used for voting purposes in Wisconsin. One type of approved identification is:

> [a]n unexpired identification card issued by a university or college in this state that is accredited, as defined in s. 39.30(1)(d), or by a technical college in this state that is a member of and governed by the technical college system under ch. 38, that contains the

---

[2] One of the original plaintiffs was Benjamin Quintero, a student at the Milwaukee School of Engineering, who alleged that he did not have an ID that complied with Wis. Stat. 5.02(6m). Dkt. 43, ¶ 72. But Quintero was dropped from the case because he later obtained a compliant student ID. *See* Dkt. 52 and Dkt. 53.

4

> date of issuance and signature of the individual to whom it is issued and that contains an expiration date indicating that the card expires no later than 2 years after the date of issuance if the individual establishes that he or she is enrolled as a student at the university or college on the date that the card is presented.

Wis. Stat. § 5.02(6m)(f).[3]

Common Cause Wisconsin challenges the portions of § 5.02(6m)(f) that require student IDs to display the following four things: (1) an issuance date, (2) an expiration date, (3) an expiration date not more than two years after the issuance date, and (4) a signature. Common Cause Wisconsin asserts claims under both 52 U.S.C. § 10101(a)(2)(B) and the Constitution. The court has a duty to avoid federal constitutional questions when possible, *see Gibson v. American Cyanamid Co.*, 760 F.3d 600, 608 (7th Cir. 2014), so the court will begin with the statutory claim.

1. **Statutory claim**

Common Cause Wisconsin's statutory claim arises under § 10101(a)(2)(B), which is sometimes referred to as the "materiality provision." It states:

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

---

[3] The other types of approved IDs are: a Wisconsin's driver's license, a Wisconsin identification card, an identification card issued by a U.S. uniformed service, a U.S. passport, a certificate of U.S. naturalization that was issued not earlier than two years before the date of an election, a driving receipt, an identification card receipt, an identification card issued by a federally recognized Indian tribe in Wisconsin, and a veterans identification card issued by the veterans health administration of the federal department of veterans affairs. Wis. Stat. § 5.02(6m).

5

Section 10101 also limits the use of literacy tests and prohibits the use of disparate standards within a political subdivision in determining whether an individual is qualified to vote. 52 U.S.C. § 10101(a)(2)(A) and (C).

As an initial matter, defendants challenge whether § 10101(a)(2)(B) applies at all to requirements for a voter ID. Defendants say that the purpose of the law, which was enacted as part of the Civil Rights Act of 1964, was to address discrimination against African Americans who were trying to register to vote. *See Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008). And they cite three cases in which courts concluded that § 10101 doesn't apply to voter ID laws. *Common Cause/Georgia League of Women Voters of Georgia, Inc. v. Billups*, 439 F. Supp. 2d 1294, 1357–58 (N.D. Ga. 2006); *Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 841 (S.D. Ind. 2006); *Gonzalez v. Arizona*, No. CV 06-1268-PHX-ROS, 2007 WL 9724581, at *2 (D. Ariz. Aug. 28, 2007).

Defendants raise a fair point about the purpose of the § 10101. Other courts reviewing the statute's legislative history have noted that its primary purpose was "to address the practice of requiring unnecessary information for voter registration with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003); *Org. for Black Struggle v. Ashcroft*, 493 F. Supp. 3d 790, 803 (W.D. Mo. 2020). More generally, the statute was "enacted pursuant to the Fifteenth Amendment for the purpose of eliminating racial discrimination in voting requirements." *Rokita*, 458 F. Supp. 2d at 839. A statute requiring a signature or an expiration date on a voter ID is a long way away from "tactics [such] as disqualifying an applicant who failed to list the exact number of months and days in his age on his or her registration application." *Condon v. Reno*, 913 F. Supp. 946, 949–50

6

(D.S.C. 1995). But the text of § 10101(a)(2)(B) isn't limited to race discrimination or voter registration. The court concludes that § 10101(a)(2)(B) is not directly solely to cases of dirty tricks motivated by race discrimination.

But the argument by Common Cause Wisconsin doesn't square with the statutory text. Common Cause Wisconsin contends that a voter ID is a "record or paper" relating to voting, and that the omission of a signature is not material to determining whether the individual is qualified to vote. The crux of this argument turns on what it means to be "qualified" to vote. Common Cause Wisconsin apparently has in mind only the *substantive* voting qualifications, such as being a citizen, a resident of Wisconsin, and at least 18 years old. Common Cause Wisconsin is right that whether the individual's ID bears a signature is not a substantive qualification of this type. But "qualified" in § 10101(a)(2)(B) is not limited to these substantive qualifications.

The phrase "qualified under State law" is defined in § 10101(e): the words 'qualified under State law' shall mean qualified according to the laws, customs, or usages of the State."[4] Under Wisconsin law, an individual is not qualified to vote without a compliant ID. Defendants' straightforward argument squares with the statutory text: an individual isn't qualified to vote under Wisconsin law unless he or she has one of the forms of identification listed in § 5.02(6m), so any required information on an ID is indeed "material" to determining whether the individual is qualified to vote.

---

[4] The definitions set out in subsection (e) set apply "[w]hen used in this subsection." But subsection (e) provides the enforcement mechanism for the section, including subsection (a). So the structure of the section makes it clear that the definitions in subsection (e) must apply throughout § 10101.

As for Common Cause Wisconsin's observation that the requirements for student IDs "are not uniformly imposed on all voters," Common Cause Wisconsin appears to be contending that any information required on an ID isn't "material" unless identical information is required for every form of ID. But that is conflating a claim under § 10101 with a claim under the Equal Protection Clause. Common Cause Wisconsin relies on *Martin v. Crittenden*, in which the plaintiffs relied on § 10101(a)(2)(B) to challenge one Georgia county's decision to reject absentee ballots that didn't include a date of birth. 347 F. Supp. 3d 1302, 1308–09 (N.D. Ga. 2018). *Martin* isn't instructive because the court held that the county's decision was inconsistent with state law. *Id.* In this case, the information at issue is required by state law. Common Cause Wisconsin cites no authority for the view that information on an ID that is required by state law to vote isn't material to a voter's eligibility unless every form of voter ID requires the same information. If that were the case, it would invalidate most if not all of the voter ID requirements because each ID includes different information.

The information challenged by defendants is material to a determination whether an individual may vote under Wisconsin law. Defendants have advanced a common-sense argument regarding why the information challenged by defendants is material to a determination whether an individual is "qualified" to vote under state law. Common Cause Wisconsin neither explains why defendants are wrong nor cites any authority requiring a contrary interpretation. The court concludes that defendants are entitled to summary judgment on the claim under § 10101(a)(2)(B).

2. **Constitutional claim**

Common Cause Wisconsin contends that the challenged requirements in § 5.02(6m)(f) "impose[] burdens on student voters that are not justified by any rational, legitimate, and

8

important regulatory state interest," so they violate the First and Fourteenth Amendments. Dkt. 46, at 10. Defendants contend that § 5.02(6m)(f) doesn't impose any burden on the right to vote but rather gives students another ID option that other voters don't have, that Common Cause Wisconsin may not bring a "piecemeal" attack to just one voting regulation, and that all the challenged requirements in § 5.02(6m)(f) are rationally related to a legitimate interest.

Both sides contend that *Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020), supports their positions. That case was a consolidated appeal of *One Wisconsin Inst., Inc. v. Thomsen*, No. 15-cv-324-jdp (W.D. Wis.), and *Frank v. Walker*, No. 11-c-1128-lsa (E.D. Wis), and it involved numerous challenges under multiple legal theories to Wisconsin voting regulations, including one part of § 5.02(6m)(f). The parties' arguments in this case relate to two types of challenges in *Luft*.

First, there were various challenges to restrictions on access to the ballot, such as limitations on early voting and an increase in the durational residency requirement. The court of appeals reviewed those challenges under the so-called *Anderson-Burdick* framework, which requires the court to balance the burden on the plaintiffs' right to vote against interests asserted by the state. *Anderson v. Celebrezze*, 460 U.S. 780, 788–89 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). The court of appeals rejected the plaintiffs' challenges on the grounds that they related to isolated restrictions in a voting regime that generally made it easy to vote, and that the burdens on the right to vote weren't sufficiently severe to override the state's interests. *Luft*, 963 F.3d at 672, 675–77.

Second, the plaintiffs challenged the portion of § 5.02(6m)(f) that prohibits a voter from using an expired student ID to vote. The court of appeals analyzed this claim under the Equal Protection Clause rather than the *Anderson-Burdick* framework. *Id.* at 677. The court

9

concluded that requiring IDs to be current served a legitimate purpose, but there was "still a problem" with § 5.02(6m)(f) because "a student ID card, alone among the sorts of photo ID that Wisconsin accepts, is not sufficient for voting unless the student also shows proof of current enrollment. . . . No other category of acceptable identification depends on ongoing affiliation of any sort." *Id*.

After the court of appeals issued its decision, the defendants moved for clarification, asking: "which elements are enforceable in Wisconsin's statute governing student IDs for voting?" *Luft v. Evers*, Nos. 16-3003, 16-3052, 16-3083, 16-3091 (7th Cir.), Dkt. 101, at 2. The court of appeals granted the motion for clarification, and added this statement:

> Our opinion holds that the state may not require student IDs to be unexpired, when the student provides some other document demonstrating current enrollment. The point of our decision is that requiring two documents from students, but not other voters, needs justification, which has not been supplied. But a student who appears at the polls with an expired student ID card, and without proof of current enrollment, need not be allowed to vote.

*Id.*, Dkt. 102.

In this case, the parties dispute whether the court should analyze Common Cause Wisconsin's claim under the *Anderson-Burdick* framework or simply apply a rational basis review. *Luft* strongly suggests that the court should apply a rational basis review under the Equal Protection Clause. To begin with, *Luft* says that a claim under *Anderson-Burdick* requires an evaluation of "the whole electoral system." *Luft*, 963 F.3d at 671–72. "[E]lectoral provisions cannot be assessed in isolation. . . . One less-convenient feature does not an unconstitutional system make." *Id.* at 675. Common Cause Wisconsin's claim in this case *is* looking at one provision in isolation. Common Cause Wisconsin isn't challenging the voter ID requirement generally but rather the requirements for one form of ID. So any claim under *Anderson/Burdick*

10

is doomed to fail because Common Cause Wisconsin's focus is too narrow. Also, *Luft* itself applied a rational basis review under the Equal Protection Clause to the challenge to a different portion of § 5.02(6m)(f). The court can discern no reason why the same analysis wouldn't apply here.

Common Cause Wisconsin says that *Anderson-Burdick* applies to all voting regulations, citing *Acevedo v. Cook County Officers Electoral Board*, 925 F.3d 944, 948 (7th Cir. 2019). But the court of appeals has since disclaimed that language from *Acevedo*, stating that it was inconsistent with *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807(1969), a case that applied rational basis review to a claim challenging the denial of absentee ballots to prisoners who had the right to vote in their state. *See Tully v. Okeson*, 977 F.3d 608, 615–16 (7th Cir. 2020). The court of appeals harmonized *Anderson-Burdick* and *McDonald* as follows: "all election laws affecting the right to vote are subject to the *Anderson/Burdick* test, but election laws that do not curtail the right to vote need only pass rational-basis scrutiny." *Id.* The court further clarified: "[U]nless a state's actions make it harder to cast a ballot at all, the right to vote is not at stake." *Id.* at 611.

The plaintiffs in *Tully* were challenging an Indiana law that allowed only some groups of people to vote by mail, including anyone over the age of 65. Relying on the *Anderson-Burdick* framework, the plaintiffs contended that Indiana's absentee-voting regime requiring some Indiana voters, themselves included, to cast ballots in person during the COVID-19 pandemic hindered their ability to vote. The court rejected that view, observing that absentee ballots offered an *additional* way to vote. The court put it this way: "If Indiana's law granting absentee ballots to elderly voters changed or even disappeared tomorrow, all Hoosiers could vote in person this November, or during Indiana's twenty-eight-day early voting window, just the

11

same. Consequently, at issue is not a claimed right to vote but a claimed right to an absentee ballot." *Id.* at 614 (alterations and internal quotation marks omitted). Restricting mail-in voting to certain groups did "not make it harder for anyone to cast a ballot" in general, so the restriction didn't implicate the right to vote. *Id.* at 614, 616.

Like *Luft*, *Tully* strongly supports a view that Common Cause's claim should be evaluated under the Equal Protection Clause on a rational basis standard. And like Indiana's statute on absentee voting, § 5.02(6m)(f) authorizes an additional way to vote for some individuals. If Wisconsin were to repeal § 5.02(6m)(f), students could still use any of the other authorized IDs for voting. It would be more convenient for some students to use an ID issued by their college or university, but the same was true for Indiana voters who wanted to use an absentee ballot. *See Nashville Student Org. Comm. v. Hargett*, 155 F. Supp. 3d 749, 757 (M.D. Tenn. 2015) (rejecting voting rights challenge to law that prohibited use of student IDs for voting because "[s]tudents, like everyone else, can select among a state-issued driver license, a United States passport, or the free, state-issued non-driver identification card. The Tennessee Voter ID Law merely does not allow students to use the student identification cards that they already have.").

Under a rational basis standard, the question is simply whether there is a rational reason for different treatment of two groups that appear to be similarly situated. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602 (2008). Even if the state doesn't provide a reason, the court may not invalidate a statute if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Common Cause's challenges to § 5.02(6m)(f) fail under that standard.

The court of appeals has already held that "[d]rawing a line between current and expired documents serves a legitimate governmental purpose." *Luft*, 963 F.3d at 677. Specifically, the requirements for an issuance date and an expiration date are rationally related to the purpose of ensuring "the reliability of the identification presented." *See Rokita,* 458 F. Supp. 2d at 841–42. Other IDs that may be used for voting require issuance dates and expiration dates as well, so students aren't being singled out as they were in *Luft*. *See* 22 U.S.C. § 217(a) (passport); Wis. Stat. §§ 343.17(3) (driver's license), 343.50(1)(c)2.b. (temporary receipts for state ID), 343.50(3)(a) (state ID). Most other voter IDs, including a driver license and a state ID, must also include a signature. *See* Wis. Stat. § 343.17(3) and § 343.50(3). That alone undermines any claim of discrimination. Although Wisconsin poll workers are not instructed to verify a voter's identity with the signature on her ID card at this time, Dkt. 43, ¶¶ 35, 37, it is not irrational to believe that a signature could be used to help resolve any questions about identity that might arise after the election.

Common Cause Wisconsin says that the requirements for student IDs are irrational because "most common forms of photo identification are accepted as voter IDs exactly as issued by the state, federal, or tribal government which issues the ID." Dkt. 46, at 1. But that is exactly the point. The content of nearly all of the other voter IDs is regulated by another state or federal statute, making them more recognizable and uniform, and potentially making them harder to fake. That's not the case for student IDs. Common Cause doesn't identify any uniform standards that Wisconsin colleges and universities have adopted, which other courts have found to be a reason to treat student IDs differently. *See N. Carolina State Conf. of the NAACP v. McCrory*, 182 F. Supp. 3d 320, 523 (M.D.N.C. 2016) ("inconsistency in the way colleges issued IDs" provided a "plausible" reason for declining to permit student IDs to be

13

used for voting); *Hargett*, 155 F. Supp. 3d at 756 (concluding that it was rational to believe that student IDs are more likely to be falsified).

By communicating to colleges and universities what the contents of a student ID should be, § 5.02(6m)(f) encourages uniformity in student IDs. It would be rational for the legislature to conclude that making student IDs more uniform enhances their reliability, makes them more difficult to falsify, and makes it easier for poll workers to recognize a valid student ID. For that reason alone, it is rational to impose requirements on a student ID that may not be required for other voter IDs. The additional benefit provided by the challenged requirements may be limited or even somewhat speculative, but that is enough to survive a rational basis challenge. The requirement than the ID's expiration date be no more than two years after the issuance date is also rationally related to the interest in uniformity because some Wisconsin post-secondary institutions and programs last two years or less. Dkt. 43, ¶ 52.

## CONCLUSION

Plaintiffs have failed to show that § 5.02(6m)(f) discriminates against them without a rational basis or that the requirements in § 5.02(6m)(f) aren't material to determining whether they are qualified to vote under Wisconsin law. Accordingly, defendants are entitled to summary judgment.

## ORDER

IT IS ORDERED that:

1. Plaintiffs' motion to lift the stay, Dkt. 54, is GRANTED.
2. Plaintiff Common Cause is DISMISSED for lack of standing.

3.  Defendants' motion for summary judgment, Dkt. 47, is GRANTED, and plaintiffs' motion for summary judgment, Dkt. 45, is DENIED.

4.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered December 9, 2021.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge